**UNITED STATES of America,**
**Appellee,**

v.

**Daniel Richard ROE, a/k/a**
**"Danny," Appellant.**

**No. 75–1433.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 9, 1975.

Decided Dec. 11, 1975.

Rudolph L. Ditrapano, Charleston, W. Va. (Larry W. Andrews and Guy R. Bucci, Charleston, W. Va., on brief), for appellant.

John A. Field, III, U. S. Atty. (William A. Pope and Thomas A. Crawford, Jr., Sp. Attys., U. S. Dept. of Justice, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal is from the conviction of the defendant charged with corruptly endeavoring to influence and impede a petit juror in violation of § 1503, 18 U.S.C. The defendant appeals on the grounds of (1) the sufficiency of the evidence; (2) the reading of the defendant's grand jury testimony to the trial jury; (3) the Trial Court's definition of the term "petit juror; " (4) failure to comply with the terms of the Jencks Act; and (5) withholding of exculpatory material from the defendant. We affirm.

█ Taking the view most favorable to the Government, as we must in considering the sufficiency of the evidence, we hold there was substantial evidence to sustain the jury's finding of guilt in this case. *See, United States v. Sherman* (4th Cir. 1970) 421 F.2d 198, 199–200, *cert. denied* 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970).

It is undisputed that around 11:30 o'clock on the evening after Mrs. Evans had been sworn as a juror in the Crouse trial, the defendant called the Evans house. In his grand jury testimony, the defendant admitted that earlier Crouse had shown him a list of the jurors drawn for the week of the Crouse trial and asked him if he knew Janet Evans. It was after this that the defendant made his telephone call to the Evans' home. Mrs. Evans answered the telephone when the defendant called. The defendant asked to speak to Mr. Evans, the husband of the juror. From this point there is some difference between the testimony of Mrs. Evans and her husband, on the one hand, and of the defendant, on the other. The testimony of the husband is that at the outset of his conversation the defendant inquired whether any member of the husband's family was on the jury. When the husband responded affirmatively, the defendant then told the husband that his wife was on the Crouse jury. At the time the husband, though knowing his wife was on a jury, did not know the case on which she had been selected as a juror. The defendant, according to the husband, proceeded to state that Crouse was not guilty but that an ex-chief "was out to get him." He referred to the fact that Crouse "had been good to [him] since [he] had been on the police force." He added that other officers would be in the courtroom the next day to give Crouse moral support and "that there were some phone calls being made to try to help" Crouse in the trial. The defendant then shifted the conversation to a problem the husband was having with Beacon Ambulance Service, a problem of which the defendant apparently had some knowledge. He told the husband that "[I]f there is anything we can do to help you, we would." [1]

The defendant would dismiss the conversation as an attempt to influence a juror claiming that in reality he made the call for the purpose of inquiring whether certain equipment in the garage of a deceased friend belonged to the husband and any reference to the Crouse trial was merely an innocent aside. He would, also, make much of the fact that he had talked to the husband and not the juror.

█ That the defendant talked with the husband of the juror, and not to the

---

1. The husband assumed "we" referred to the defendant and his father because the latter was employed by Beacon and the former had been until he joined the local police force some months earlier.

juror directly about the trial is, however, not a defense.[2] Approaching a juror through an intermediary, even a police informer, is sufficient to constitute an endeavor.[3] Inducing a third person to contact a juror has been held by this Court to violate the statute.[4] Nor is it of any moment whether the effort to influence the juror was successful or not. "[T]he endeavor, whether successful or not, is the gist of the offense." [5] Neither do we think the fact that the effort to influence was subtle or circuitous makes any difference. If reasonable jurors could conclude, from the circumstances of the conversation, that the defendant had sought, however cleverly and with whatever cloaking of purpose, to influence improperly a juror, the offense was complete. Whether the conversation was innocent and the reference to the Crouse case so incidental as to be innocuous, as the defendant would claim, was under the circumstances for the jury. In determining this issue the jury must rely on the testimony of the parties and their respective accounts of the allegedly improper approach to a juror. In the final analysis, the basic question was one of credibility as between Mrs. Evans and her husband, on the one hand, and the defendant, on the other. The jury chose to accept the version of Mrs. Evans and her husband. That was the jury's prerogative.

■ The defendant assails, also, the admission of his grand jury testimony. In that testimony, he admitted, as has already been stated, that Crouse had shown him a list of the jurors for the week of the Crouse trial prior to the time he called the Evans. When the Government indicated it intended to offer the grand jury testimony in evidence, defendant's counsel objected that the *Miranda* warnings had not been given.[6] The grand jury transcript, however, showed clearly that such warnings had been given the defendant. Counsel for the defendant then objected that certain statements by the United States Attorney, made during the defendant's appearance before the grand jury, were improper and for that reason he objected to the introduction of the entire transcript of the defendant's grand jury testimony. The United States Attorney agreed to excise all the objectionable parts of the testimony and the Trial Court indicated it would so excise the objectionable parts of the testimony. The defendant, however, would not consent, asserting that, if any part of the testimony went in, all should be admitted. Under those circumstances, the Trial Court admitted the entire transcript of defendant's grand jury testimony. While it would have probably been better practice for the Trial Court to have excised the objectionable language from the record before submitting it to the jury, the defendant is in no position to posit error on the Court's failure to do so. It was the defendant's own insistence that all or none of the record be admitted that occasioned the Court's ruling. Certain of the defendant's statements before the grand jury were plainly admissible and defendant could not defeat the Government's right to use that testimony by asserting that there were other statements in the record by the United States Attorney which were objectionable. When the Government offered, with the approval of the Trial

---

2. Mrs. Evans overheard the first part of the conversation on an extension telephone; she hung up when she heard the defendant mention that she was on the Crouse jury.

3. *See Osborn v. United States* (1966) 385 U.S. 323, 333, 87 S.Ct. 429, 17 L.Ed.2d 394, *reh. denied* 386 U.S. 938, 87 S.Ct. 951, 17 L.Ed.2d 813 (1967).

4. *Hicks v. United States* (4th Cir. 1949) 173 F.2d 570, *cert. denied* 337 U.S. 945, 69 S.Ct. 1501, 93 L.Ed. 1748 (1949).

5. *United States v. Cioffi* (2d Cir. 1974) 493 F.2d 1111, 1119, *cert. denied* 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974); *see, also, United States v. Russell* (1921) 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553.

6. *See United States v. Mandujano* (5th Cir. 1974) 496 F.2d 1050, *cert. granted* 420 U.S. 989, 95 S.Ct. 1422, 43 L.Ed.2d 669.

Court, to excise such objectionable portions, the defendant was given all that he could demand. His refusal to agree to such excision and his demand that if any part of the grand jury testimony were used, all of it must be admitted, precludes him from asserting error on account of the admission of such testimony.

During its charge to the jury, the Court in defining "petit juror," said: "You * * * have been impanelled as a petit jury in this case, so you, each of you, is a petit juror, as was the juror who is alleged to have been corruptly contacted directly, or through her husband, by the defendant by telephone for purposes of influencing her thinking and verdict in the former criminal case in this court." Defendant contends that this language had the effect of telling the jurors to place themselves in the position of the victim rather than the defendant. In *United States v. DeAlesandro* (2d Cir. 1966) 361 F.2d 694, 697, *cert. denied* 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966), the prosecutor asked the jurors to identify themselves with the juror who was tampered with. As did the Court in that case, we feel that the Court's definition here "did not transgress the bounds of propriety in this jury-tampering case."

During the Crouse trial, Mrs. Evans was interviewed by the Trial Judge in his chambers concerning the call from the defendant. The court reporter, Crouse and counsel were present. Mrs. Evans told the Judge, and the Judge agreed, that "there [was] nothing to it [the telephone call from the defendant] * * *." Defendant argues that the Trial Court erred in not ordering the Government to turn over all statements of Government witnesses pursuant to the Jencks Act,[7] and that defendant was denied access to the foregoing "exculpatory" statement of Mrs. Evans. It would seem that defense counsel is confusing

the requirements of the Jencks Act and *Brady v. Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The Jencks Act directs the Government to furnish the defense with all prior statements of Government witnesses who actually testify.[8] The statement of Mrs. Evans, to which counsel refers, is one made by Mrs. Evans, when interviewed by the Trial Judge during the Crouse trial. The statement was a matter of record in that trial. We do not consider such a statement within the Jencks Act. Moreover, the statement was incorporated in the transcript of the record in the Crouse trial in the District Court for the Southern District of West Virginia prior to the defendant's trial and was available to the defendant or his counsel as a part of the official record of that trial. It is obvious that the Government did not, as the District Court found, suppress or conceal any exculpatory statement.

Accordingly, for the reasons stated above, we affirm the judgment of the District Court.

*Affirmed.*

---

7. 18 U.S.C. § 3500.

8. 18 U.S.C. § 3500(a) requires production of statements "in the possession of the United States" made "to an agent of the Govern-

ment." We decline to hold that a statement made to a Federal Judge in chambers falls within the purview of the Jencks Act.