**UNITED STATES of America, Appellee,**

v.

**Barry LAZZERINI, Defendant, Appellant.**

**No. 79–1246.**

United States Court of Appeals, First Circuit.

Argued Nov. 7, 1979.

Decided Dec. 28, 1979.

William A. Brown, with whom Brown & Webster, Boston, Mass., was on brief, for defendant, appellant.

4. Plaintiff lodged a suitable objection to the instruction which was renewed in his unsuccessful motion for new trial.

David P. Twomey, Special Atty., Dept. of Justice, with whom Edward F. Harrington, U. S. Atty., and Jeremiah T. O'Sullivan, Special Atty., Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, CLARKE, District Judge.*

COFFIN, Chief Judge.

Appellant, convicted after jury trial of "corruptly . . . endeavor[ing] to influence . . . [a] petit juror", in violation of 18 U.S.C. § 1503, appeals on the ground of insufficiency of evidence. In reviewing the evidence, we of course accept the facts and reasonable inferences therefrom favorable to the government. Moreover, we take the appropriate legal standard of "corruptly endeavor" to be as stated recently by the Fourth Circuit in *United States v. Roe*, 529 F.2d 629, 632 (1975):

> "Neither do we think the fact that the effort to influence was subtle or circuitous makes any difference. If reasonable jurors could conclude, from the circumstances of the conversation, that the defendant had sought, however cleverly and with whatever cloaking of purpose, to influence improperly a juror, the offense was complete."

We report the following relevant evidence favorable to the prosecution. About two weeks after the commencement of a criminal trial of a friend of appellant, one Tashjian, appellant asked Celine Farrell, his employee and former housemate, to ascertain if her sister, Dupre, was on the jury hearing Tashjian's case, and, if so, to find out how his chances looked. This conversation took place shortly after midnight while appellant drove Farrell home. A few minutes later appellant telephoned Farrell, asking again if she would call her sister immediately. Farrell hesitated and appellant renewed his request that she find out if her sister was serving on Tashjian's panel. Farrell did not call her sister but told appellant that her sister would not talk about the case. Appellant again asked when Farrell could see her and said it was important to him. The next day Farrell, not yet having made her contact, was at appellant's apartment and, prompted again by appellant, attempted to contact her sister.

Finally, on the following day, Farrell succeeded in arranging a meeting with her sister. Appellant, in a phone conversation before this meeting, again told Farrell to see if her sister was on Tashjian's jury and to find out what his chances were. Farrell, in her grand jury testimony, also testified that appellant wanted her to tell her sister that she knew Tashjian and indeed that he was also a friend of hers and seemed like a "nice guy". Appellant also told Farrell that he believed Tashjian innocent.[1] Farrell said that she couldn't say that, whereupon appellant said, "Don't."

Later in the day Farrell did talk with Dupre. Farrell testified that she told her sister that she knew Tashjian and that he was a friend of hers and a nice guy. Dupre testified that Farrell had gone beyond this and said she knew Tashjian was innocent. In any event, Dupre told the trial judge about her sister's approaching her and was subsequently excused from the jury.

■ While this case lacks the high drama of bribery, blackmail, and overt threats for direct pecuniary gain encountered in some juror corruption cases, the ingredients of both corrupt motive and an "endeavor" to influence are present. We accept the government's argument that "endeavor" connotes a somewhat lower threshold of purposeful activity than "attempt". Its reference to the legislative history of related statutes is apt. U.S.Code Cong. & Ad-

---

* Of the Eastern District of Virginia, sitting by designation.

1. The facts asserted in these two sentences derive from Farrell's grand jury testimony. Her testimony at trial was weaker and reluctant. At the time of trial Farrell had been living once again with appellant for several weeks. As the court noted, in focusing on the importance of the grand jury testimony, "I am going to let him [the prosecutor] try again because, the prosecutor, whose chief witness is living with the defendant, has a pretty rough row to hoe."

min.News, 90th Congress, 1st Session, 1967, p. 1760ff.

 The evidence portrayed appellant as asking Farrell exigently, no fewer than five times, to see her sister, and as underscoring the importance of this mission to him. The message to be communicated was not such as to permit only a neutral interpretation. The conveying of information in a specially arranged and urgent visit of a sister to a juror that a party on trial was a friend of the sister and a "nice guy", even without any protestations of disbelief of guilt or knowledge of innocence, could reasonably be thought an effort to influence the juror in favor of the party on trial. Appellant's endeavor to see that this conveyance was in fact accomplished was thus an "endeavor [ ] . . . to influence . . . [a] petit juror". It is indeed difficult to reach any other interpretation, especially given evidence of improper motive.

Appellant argues that he withdrew any intent to promote further conduct on the part of Farrell, when she said that she could not relay to her sister appellant's brief in Tashjian's innocence, and appellant acquiesced, saying, "Don't." The record is not clear as to whether the "Don't" referred only to appellant's statement of belief in Tashjian's innocence or to appellant's other requests that Tashjian was a friend and a nice guy. Moreover, the fact that Farrell did in fact communicate to Dupre her friendship with and high regard for Tashjian, as well as assert either her own doubt in his guilt or her knowledge of his innocence could have led the jury reasonably to believe that the "Don't" was not a clear signal of abandonment. Or the jury could have found the endeavor to have been committed before any signal to withdraw was sounded. In any event, the meaning and effect of appellant's response was for the jury and, no particular instructions having been requested or given on this point, there is no cognizable error.

This leaves us with the critical ingredient of corrupt motive. Appellant argues that the attempt to ascertain the posture of a case, without more, cannot be a corrupt

endeavor. Whether or not this be so, there is more here—the deliberate and insistent utilization of a sister of a juror to follow appellant's suggestion and assert her own friendship with Tashjian and her own belief in his niceness. There has been no suggestion or argument as to any legitimate purpose consistent with these facts. The jury could well have believed, in light of the timing and persistence and urgency of appellant's talks with Farrell, appellant's known friendship with Tashjian, and his instructions as to what Farrell should say to her sister, including a positive assessment of Tashjian as a person, that appellant's purpose was improperly and corruptly to influence Dupre to favor Tashjian.

*The judgment is affirmed.*