UNITED STATES of America, Appellee,

v.

Barry G. TEDESCO,
Defendant–Appellant.

No. 80–1161.

United States Court of Appeals,
First Circuit.

Argued Sept. 12, 1980.

Decided Dec. 2, 1980.

Morton Berger, New York City, for appellant.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington,

U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, NELSON,* District Judge.

BOWNES, Circuit Judge.

Appellant Barry G. Tedesco appeals his conviction under 18 U.S.C. § 1503 [1] for corruptly endeavoring to influence, obstruct, and impede the due administration of justice in the United States District Court for the District of Massachusetts. He claims both that the district court improperly denied his motion to dismiss the indictment for improper venue and that the verdict is not supported by substantial evidence. For the reasons stated below, we affirm the judgment of the district court.

## FACTS

In its indictment the Government alleged that Tedesco violated 18 U.S.C. § 1503 by endeavoring to induce a witness not to testify fully and completely about certain matters that might inculpate the defendant Benjamin De Magistris in his then pending trial in the United States District Court for the District of Massachusetts. The facts are basically undisputed. The witness, John Makris, was a "Star Route" contractor [2] who transported mail from Yonkers, New York. In early 1978 he received a number of solicitations to bid on Star Routes originating in Connecticut. He applied for a bond and bid on five or six of the routes, but was not awarded any of them. He then lodged a complaint with the United States Postal Service alleging irregularities in the bonding procedures for postal routes. [3] In May of 1979 Makris testified before the grand jury, which ultimately returned a 17–count conspiracy and fraud indictment against De Magistris, whose company had been awarded several of the Connecticut routes, and a codefendant.

In late October or early November of 1979, Tedesco, also a Star Route driver, saw Makris on the loading platform at the Mount Vernon Management Sectional Center of the United States Postal Service. Tedesco stated that Makris had De Magistris "in a very good position" and that De Magistris "could do a lot" for him. Tedesco also said that as a friend of both Makris and De Magistris, he felt caught in the middle.

On the evening of November 5, 1979, Tedesco called Makris at his home in Yonkers, New York. He reiterated that Makris had De Magistris in a "very good position" and that De Magistris "could do a lot" for him. He suggested that Makris speak to De Magistris, but Makris refused. Tedesco then suggested that he and Makris meet because he could not talk on the telephone, but no specific arrangements were made at

---

* Of the District of Massachusetts, sitting by designation.

1. Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such a juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both. June 25, 1948, c. 645, 62 Stat. 769.

2. The Government notes in its brief that much of the mail in the United States is carried by civilians pursuant to Highway Contract Route Contracts, which are commonly referred to as "Star Routes."

3. Makris indicated in his testimony that he believed that De Magistris paid off the bonding companies to discover the lowest bids.

that time. Later that evening, Makris called Postal Inspector McDonough, case agent in the *De Magistris* case.

The next day, Makris' truck broke down. Makris called the appellant to ask if he could rent or borrow a truck. Tedesco explained that he did not have any spare equipment, but he did make arrangements to meet Makris in Millville, New York on the morning of November 8, 1979. At this meeting Tedesco again repeated that De Magistris "could do a lot" for Makris. He spelled out what he meant: De Magistris could get equipment for Makris, arrange the trade–in, buying, and financing of a truck without any money down, subcontract to him a contract that Makris had hoped to obtain and "supply the trucks and the drivers and pay them" until Makris was able to do so. Tedesco then suggested that Makris meet with De Magistris' attorney and review his testimony. Makris replied that he would not change his testimony or perjure himself. Tedesco then said " '[h]e [De Magistris] knows you have to testify. He doesn't want you to perjure yourself or change your testimony'–just if you have anything solid against him, you know, not to add any more wood to the fire." Makris, who testified that he had told the *De Magistris* grand jury all that he knew, assured Tedesco that he would not "add any more wood to the fire." Makris also testified that he understood Tedesco's comment about not adding "more wood to the fire" to mean that he should not reveal at trial any information he had not previously given to the grand jury.

Makris called Inspector McDonough after the meeting with Tedesco. On November 9, McDonough attached a tape recorder pickup to Makris' telephone.[4] Makris then called Tedesco. During this conversation, which was played for the jury, Tedesco again said that there were a lot of things De Magistris could do for Makris, that he thought De Magistris did not want any more wood added to the fire and that, if Makris had some solid information against De Magistris, he should "hold back on it." He also discussed the subcontract originally brought up during the meeting on November 8.

Postal Inspector McDonough arrested appellant on November 10. According to the Inspector's testimony, Tedesco, after being advised of his *Miranda* rights, told him that he did not know of De Magistris' indictment or arrest and had not contacted and would not contact Makris concerning his testimony in the upcoming trial. At this point McDonough played a portion of the telephone conversation recorded the previous day. Tedesco then stated that both Makris and De Magistris were his friends and that he wanted to help them both: Makris needed money and De Magistris needed favorable testimony. He admitted that he did attempt to have Makris alter his testimony or withhold damaging information, but stated that at the time he did not understand the implications of his actions.

## VENUE

■ Tedesco was tried and convicted in the United States District Court for the District of Massachusetts for corruptly endeavoring to influence, obstruct, and impede the due administration of justice in that district. He challenges venue on the undisputed ground that there was no attempt to influence the witness in Massachusetts; all attempts to influence Makris occurred in New York.

The right to be tried for a crime in the state where it was committed was deemed so important that it was enumerated twice in the Constitution. Article III, section 2,

---

4. Makris initially refused to allow the recording device to be attached to his telephone. According to his testimony, which the testimony of the Inspector tended to contradict, he agreed to the recording only after McDonough presented him with a subpoena to testify before the grand jury in Boston and after McDonough informed him that Tedesco would be arrested immediately unless Makris agreed to have the device put on his telephone. Makris testified that appearing before the grand jury in Boston would cause him to lose time from work and that he did not want Tedesco arrested at that time because Tedesco's wife had just given birth and was still hospitalized.

clause 3 provides that "[t]he trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed." Under the sixth amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." This safeguard is also reflected in Rule 18 of the Federal Rules of Criminal Procedure, which states that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."

■ Although the Constitution determines the venue of the trial in terms of the place where the crime has been committed, it does not furnish any guidance for determining the place of the crime. *Johnston v. United States*, 351 U.S. 215, 220, 76 S.Ct. 739, 742, 100 L.Ed. 1097 (1956). The statute under which appellant was indicted, 18 U.S.C. § 1503, does not specify the situs of the crime. The Supreme Court has ruled that when "Congress is not explicit, 'the *locus delecti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.' " *Travis v. United States*, 364 U.S. 631, 635, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961) (quoting *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946)); *accord, United States v. Roche*, 611 F.2d 1180, 1182 (6th Cir. 1980); *United States v. Chestnut*, 533 F.2d 40, 46 (2d Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976). One method of making this determination is by examining the key verbs in the statute defining the criminal offense. *United States v. Chestnut*, 533 F.2d at 46–47; *United States v. Bithoney*, 472 F.2d 16, 23 (2d Cir.), *cert. denied*, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397 (1973); C. Wright, Law of Federal Courts § 43 (3d ed. 1976). The pertinent part of section 1503 provides that "[w]hoever ... corruptly or by threats or force, or by any threatening letter or communication, *influences, ob-*

*structs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1503 (emphasis added). The words of section 1503 indicate that Congress was concerned not with the place where the threats or offers of money or other benefits were made, but with the effect such threats or bribes might have on a witness testifying in a particular proceeding. The very nature of the crime is affecting, or endeavoring to affect, the due administration of justice; the activities prohibited under the statute are those intended to influence the administration of justice where the affected judicial proceeding is being held or has been held.

This conclusion is bolstered by the legislative history of 18 U.S.C. § 1503. The source of this section is the Act of March 2, 1831, 4 Stat. 487, which outlined the contempt jurisdiction of the federal courts. *United States v. Griffin*, 589 F.2d 200, 204 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979); *United States v. O'Donnell*, 510 F.2d 1190, 1194 (6th Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); *United States v. Essex*, 407 F.2d 214, 216 (6th Cir. 1969). Section 1 of the Act of March 2, 1831, now codified at 18 U.S.C. § 401, allowed summary punishment for contemptuous behavior in or near the presence of the court. *United States v. O'Donnell*, 510 F.2d at 1194; *United States v. Essex*, 407 F.2d at 216. Section 2 of the 1831 Act, the predecessor of section 1503, permitted punishment of contempt occurring outside the presence of the court only after indictment and trial. *United States v. Griffin*, 589 F.2d at 204; *United States v. O'Donnell*, 510 F.2d at 1194–95; *United States v. Essex*, 407 F.2d at 216–17.

The Sixth Circuit, one of the few circuit courts to consider a similar venue issue, concluded that violations of section 1503 are contempts "punishable by the court whose authority is challenged regardless of where the contemptuous acts may have occurred." *United States v. O'Donnell*, 510 F.2d at 1195. In *O'Donnell* the defendant was in-

dicted in the Western District of Tennessee under section 1503 for attempting to influence the testimony of a Government witness in a mail fraud case pending against defendant in that district. *Id.* at 1191. O'Donnell had attempted to have this witness murdered; all steps taken toward this end occurred in the Northern District of Texas. *Id.* at 1192. The court decided that this would not preclude venue in the Western District of Tennessee, which was the only district in which O'Donnell's efforts to obstruct justice could have been realized. *Id.* at 1193.[5] We find this analysis persuasive.

Appellant relies heavily on the decision of the United States Court of Appeals for the District of Columbia Circuit in *United States v. Swann*, 441 F.2d 1053 (D.C.Cir. 1971). In *Swann* the defendant assaulted a witness in Maryland who had testified against him at a preliminary hearing in the District of Columbia. *Id.* at 1054. Swann was subsequently indicted and convicted for this assault in the District of Columbia under 18 U.S.C. § 1503. *Id.* The *Swann* court reversed the judgment of conviction with directions to dismiss the indictment. *Id.* at 1056. In so ruling, it rejected the district court's decision that the assault affected the due administration of justice in the District of Columbia and so was an offense begun in one district and completed in another.[6] *Id.* at 1055. The court of appeals decided that the offense was not begun in one district and completed in another or committed in more than one district, but was begun, carried out, and committed in Maryland. *Id.* We believe that the *Swann* court erred in failing to recognize that section 1503 was intended to allow a court to reach "constructive" contempts committed

outside its presence. This failure to consider the purpose of section 1503 caused the *Swann* court to misconstrue the nature of the offense prohibited by section 1503.

For the same reason, we are not persuaded by the decision of the Second Circuit in *United States v. Brothman*, 191 F.2d 70 (2d Cir. 1951).[7] In *Brothman* it was conceded that all of the defendant's efforts to persuade a witness to give false testimony before a federal grand jury sitting in the Southern District of New York occurred in the Eastern District of New York. *Id.* at 72. The court found that Brothman had not waived his objection to venue in the Southern District and reversed his conviction, *id.*, without any analysis about why venue lay in the Eastern rather than in the Southern District. We hold that venue under section 1503 is to be determined by focusing on which court is affected by the attempt to influence, obstruct, or impede the due administration of justice. It is the impact of the acts, not their location, that controls.

## SUFFICIENCY OF THE EVIDENCE

The appellant also contends that the trial court improperly denied his motion for a judgment of acquittal. Thus we must consider whether the evidence as a whole, considered in the light most favorable to the Government, together with all legitimate inferences to be drawn from it, was clearly sufficient to sustain appellant's conviction by the jury. *United States v. Doran*, 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974).

The key point of Tedesco's challenge is that, on the facts, he did not endeavor to influence a witness because he made no

---

**5.** The *O'Donnell* court specifically did not decide whether venue might also lie in the Northern District of Texas. *Id.* at 1193. Similarly we do not decide the interesting issue of whether venue in the district in which the communications at issue here were made would also be proper.

**6.** The district court in *Swann* had ruled that venue in the District of Columbia was proper under 18 U.S.C. § 3237(a), which provides that:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

**7.** *Brothman* was decided under 18 U.S.C. § 241, which is now codified at 18 U.S.C. § 1503.

explicit offer of a bribe or request for specific testimony. This argument does not withstand scrutiny. The three elements of the crime for which Tedesco was convicted are (1) endeavoring to (2) corruptly (3) influence any witness in any court of the United States or influence the due administration of justice. *See United States v. Fasolino*, 586 F.2d 939, 940 (2d Cir. 1978) (per curiam) (conviction under section 1503 for requesting county jury commissioner to approach sentencing judge). We have previously ruled that " 'endeavor' connotes a somewhat lower threshold of purposeful activity than 'attempt.' " *United States v. Lazzerini*, 611 F.2d 940, 941 (1st Cir. 1979). In *Lazzerini* the appellant was convicted under section 1503 for asking his employee and former housemate several times to discuss with her sister a trial in which the sister was a juror. On Lazzerini's instructions, his employee told her sister that the defendant was a friend of hers, a "nice guy," and innocent. We stated, quoting *United States v. Roe*, 529 F.2d 629, 632 (4th Cir. 1975), "the fact that the effort to influence was subtle or circuitous" made no difference. "If reasonable jurors could conclude, from the circumstances of the conversation, that the defendant had sought, however cleverly and with whatever cloaking of purpose, to influence improperly a juror, the offense was complete." 611 F.2d at 941. This reasoning applies with equal force to Tedesco's words here. Considering the circumstances under which Tedesco approached Makris as well as what he said, there were ample grounds for a finding of endeavoring to influence a witness corruptly.

The endeavor also need not be successful. *United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir.), *cert. denied*, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974); *see United States v. Roe*, 529 F.2d at 632 (discussing section 1503 in context of corruptly endeavoring to influence petit juror); *cf. United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921) (upholding conviction for corruptly endeavoring to influence petit juror under predecessor statute, section 135 of Criminal Code). Thus the fact that Makris might already have revealed all he knew to the grand jury does not affect the issue of the appellant's guilt or innocence.

Makris was a witness within the meaning of section 1503. A witness has been defined as one who knows or is supposed to know material facts and who is expected to be called on to testify to them. *United States v. Chandler*, 604 F.2d 972, 974 (5th Cir. 1979), *cert. dismissed*, 100 S.Ct. 1074, 444 U.S. 1104, 63 L.Ed.2d 317 (1980). The parties have stipulated that during the time that Tedesco contacted Makris with regard to his testimony, *United States v. De Magistris* was a pending case in the United States District Court for the District of Massachusetts.

An effort to alter the testimony of a witness for corrupt purposes is plainly an endeavor to impede the due administration of justice. *Anderson v. United States*, 215 F.2d 84, 87–88 (6th Cir.), *cert. denied*, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954).

In considering the facts already outlined in light of the applicable law, it is clear that the conviction must be sustained.

*Affirmed.*