**CARIBBEAN INTERNATIONAL NEWS CORP., et al., Plaintiffs,**

**v.**

**Jose FUENTES AGOSTINI, Puerto Rico Secretary of Justice, in his official capacity, Defendant.**

**No. Civ. 96–1502(HL).**

United States District Court,
D. Puerto Rico.

March 3, 1998.

Juan R. Marchand–Quintero, San Juan, PR, for El Vocero De Puerto Rico, Gaspar Roca.

Carmen P. Figueroa, Department of Justice, Federal Litigation Division, San Juan, PR, for Jose A. Fuentes–Agostini.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court are a motion to dismiss by Defendant José Fuentes Agostini ("Fuentes Agostini") and a motion for summary judgment filed by Plaintiffs Caribbean International News Corp and Gaspar Roca. They bring this action for declaratory relief pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments. Fuentes Agostini is the Puerto Rico Secretary of Justice, and he is sued in his individual and official capacity.[1] Plaintiffs publish El Vocero newspaper in Puerto Rico. On March 31, 1997, the Court granted the unopposed motion of Luis Dávila Colón ("Intervenor") for leave to intervene as a co-plaintiff. See Fed.R.Civ.P. 24. Dávila Colón is a political commentator, newspaper columnist, and licensed attorney.

Plaintiffs challenge the constitutionality of a provision of Puerto Rico's Criminal Code. The statute at issue is Article 247, which reads as follows:

**Influencing juror or others**

Any person who attempts to influence any judge, juror or person summoned or drawn as such, or chosen or appointed as an arbitrator, or person authorized by law to hear and determine a matter or controversy, in regard to his verdict or decision in any action or proceeding, pending or about to be brought before him, through any of the following means, shall be punished by imprisonment for a fixed term of six (6) years:

(a) Any written or oral communication had with such person, except in the regular course of proceedings.

(b) Any book, paper, or instrument exhibited, other than in the regular course of proceedings.

(c) Any threat, intimidation, persuasion or entreaty.

In any of the preceding circumstances, should there be aggravating circumstances, the fixed penalty established may be increased to a maximum of ten (10) years; if there should be extenuating circumstances, it may be reduced to a minimum of four (4) years.

P.R. Laws Ann. tit. 33, § 4443 (1983).

Article 247 was derived from a similar statute in the California Penal Code. El Pueblo De Puerto Rico, Apelado v. Narvaez Narvaez, 122 P.R.Dec. 80, 88–89, No. CR–86–46 Official English translation slip op. at 6–7 (1988). The Puerto Rico Supreme Court has had occasion to address the scope of this law only once. See id. In that case, Esteban Narváez Narváez ("Narváez"), approached a female acquaintance whose husband was a juror in an ongoing criminal case. Id. at 83, Official English translation at 2. Narváez told her that the person being tried in the criminal case was a relative of his and that he was innocent. She replied that she was unable to do anything about the criminal case. Narváez replied that he "knew how things were." Id. He was subsequently charged with a violation of Article 247. The Puerto Rico Supreme Court held that the purpose of the statute was to protect judicial

---

1. Personal capacity suits are appropriate when a plaintiff seeks to impose personal liability on a government official for his actions taken under color of state law. Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In this case Plaintiffs do not seek money damages; they are only asking for declaratory relief. Because their action is for equitable—not monetary—relief, this action should only have been brought against the Secretary of Justice in his official capacity. See Forte v. Sullivan, 935 F.2d 1, 2 n. 2 (1st Cir.1991); Wilson v. Brown, 889 F.2d 1195, 1197 (1st Cir.1989). Therefore, the Court dismisses this claim as against Fuentes Agostini in his individual capacity.

proceedings from improper external influences. *Id.* at 86, 89–90, Official English translation at 4, 7–8. The court further held that it did not matter that a defendant thought that he was helping to bring about justice. *Id.* at 92, Official English translation at 9–10. The statute was violated whenever a person attempts to exercise influence over a juror. *Id.* at 90, Official English translation at 8.

Plaintiffs and Intervenor allege that they publish reports or editorials on ongoing judicial proceedings in Puerto Rico. In their complaint and motion for summary judgment, Plaintiffs claim that Article 247 is unconstitutional because it is overbroad and void for vagueness. They also claim that it is not narrowly tailored to a compelling state interest and that it unconstitutionally limits their right to report on or criticize judges and judiciary proceedings. Fuentes Agostini contests these arguments. He also claims that Plaintiffs lack standing to bring this challenge and the Court should abstain from ruling on this issue to allow the local courts to address this controversy. The Court has reviewed the record, and there do not appear to be any material factual issues in dispute. For the reasons set forth below, the Court grants Plaintiffs' motion for summary judgment and declaratory relief.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine

when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. Additionally, summary judgment is available in a declaratory judgment action, just as it is available in any other action. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2768, at 753–54 (2d ed.1983).

### 1. Standing

In the motion to dismiss, Fuentes Agostini claims that Plaintiffs lack standing to challenge the constitutionality of Article 247. Specifically, he argues that Plaintiffs fail to show that they have been prosecuted under Article 247 or that there is a general threat of prosecution. As a result, he argues, there is not a case or controversy as required by Article III of the Constitution. Standing is one of the most complex areas in the field of federal jurisdiction. It is a threshold issue which goes to a federal court's power to hear a claim. *Berner v. Delahanty, II,* 129 F.3d 20, 23 (1st Cir.1997). Before a court considers the merits, it must first determine whether the plaintiff has standing to bring the cause of action. *Id.* If the plaintiff lacks standing, the court lacks jurisdiction to entertain the case. *New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 12 (1st Cir.1996).

■ A disagreement between the parties, no matter how acrimonious, is not sufficient by itself to meet Article III's limitation that a federal court may only hear a case or controversy. *Diamond v. Charles,* 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986). The conflict between a state official authorized to enforce a law and the private party subject to prosecution under the law is a classic Article III case or controversy. *Id.* at 64, 106 S.Ct. at 1704. In order to satisfy Article III's requirements, a party invoking federal jurisdiction must establish three ele-

ments: (1) that he has personally suffered "some actual or threatened injury as a result of the challenged conduct;" (2) that his injury is fairly traceable to the challenged conduct; and (3) that his injury is likely to be redressed by a favorable ruling from the court. *Berner*, 129 F.3d at 24 (quoting *Gardner*, 99 F.3d at 13). In the present case, the second and third elements are not at issue. Any injury suffered by Plaintiffs can be fairly traced to the enforcement or risk of enforcement of Article 247 against them; and any such injury would be properly redressed by an action seeking to have the article declared unconstitutional and naming as a defendant the Secretary of Justice—the government official charged with enforcing the article. *See Gardner*, 99 F.3d at 13.

█ The nub of the standing question in the present case, then, boils down to whether Plaintiffs have suffered an actual or threatened injury. When a plaintiff brings a pre-enforcement challenge to a criminal statute on the grounds that the statute is a facial violation of the First Amendment, the court must consider two potential injuries. *Id.* One is the injury of threatened enforcement; the other is the injury of a chilling effect brought about by a plaintiff limiting his own expression in order to avoid prosecution. *Id.* Both of these injuries are based on the existence of a credible threat that the statute at issue will be enforced. *Id.* at 14. In the present case, Plaintiffs argue that the credibility of any threat of prosecution can be established based on Gaspar Roca's personal fears that he is in danger of being prosecuted. This is an incorrect application of the law of standing. A plaintiff's subjective concerns that he will be prosecuted for engaging in his right of expression will not constitute an injury under the standing analysis unless the fear is objectively reasonable. *Id.* If there is a credible threat of prosecution, the plaintiff will have standing to bring his pre-enforcement challenge on First Amendment grounds. *Id.* If, however, there is no credible threat of enforcement, there will be no chilling effect and Article III's requirements will not have been met. *Id.*

█ Thus, whether there is a credible threat of prosecution becomes a critical issue. A plaintiff challenging the constitutionality of a criminal statute need not expose himself to an actual arrest or prosecution in order to have standing. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). A three-pronged test is used in these situations: a plaintiff will have standing to bring a pre-enforcement challenge (1) when he has alleged an intention to engage in conduct arguably affected with constitutional interests, (2) but proscribed by a statute, (3) if there is a credible threat of prosecution. *Id.* In the present case, Plaintiffs have submitted a sworn statement by Gaspar Roca in which he states that El Vocero has information regarding one of the Puerto Rico Supreme Court justice's personal finances; that El Vocero has cases pending before the Supreme Court; and that his attorneys have advised him not to pursue the investigation of this justice's finances because a request to the Supreme Court for the justice's financial disclosure statements could be considered to be an attempt to intimidate or persuade.[2] Roca further states that El Vocero has administered a polygraph test to an alleged murder witness, but his concern that publication of the test results could constitute an attempt to influence a judge or jury has lead him to refrain from publishing the results.[3] Additionally, Intervenor states that in his newspaper columns he has singled out judicial opinions for criticism. Newspaper reporting on court cases is certainly activity protected by the First Amendment, and Plaintiffs have demonstrated their intention to engage in such activity. Article 247–with its prohibition of any attempted persuasion or entreaty of a judge regarding his or her verdict or decision–could be used to restrict Plaintiffs from reporting on cases. Thus, Plaintiffs have demonstrated an intention to engage in conduct arguably affected with First Amendment interests, but proscribed by a statute.

█ In order for Plaintiffs to have standing, they must also demonstrate that there is

---

2. Docket no. 11, exhibit I.

3. Docket no. 11, exhibit I.

a credible threat of prosecution. *See id.;* *Gardner,* 99 F.3d at 14. A party must show that the fear of prosecution is not merely "imaginary or wholly speculative." *Babbitt,* 442 U.S. at 302, 99 S.Ct. at 2310–11. This threshold, however, is not a high one; it is "quite forgiving." *Gardner,* 99 F.3d at 14. A credible threat of prosecution may exist even though the challenged statute has never been enforced. *Babbitt,* 442 U.S. at 302, 99 S.Ct. at 2310–11. Where the circumstances indicate that a plaintiff will either be in violation of a statute which limits its normal conduct or be forced to engage in self-censorship, a pre-enforcement challenge is appropriate unless the state demonstrates that the statute is moribund or will not be enforced. *Gardner,* 99 F.3d at 16. Absent compelling evidence to the contrary, the court should assume that there is a credible threat of prosecution. *Id.* at 15. If the state has not disavowed any intention of enforcing the statute at issue, the plaintiff will generally be justified in fearing prosecution. *See Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); *Babbitt,* 442 U.S. at 302, 99 S.Ct. at 2311; *Gardner,* 99 F.3d at 14–17.

■ In the present case, the record indicates that El Vocero is a newspaper which regularly investigates and reports on current events in Puerto Rico. The scope of this coverage would certainly include pending

court cases of local interest. As such, it is conceivable that, unless El Vocero engages in self-censorship, at some point one of the newspaper's articles or editorials on pending cases could fall within the ambit of Article 247 as an attempted persuasion or entreaty directed towards the judge presiding over a pending case. At no time has Fuentes Agostini disavowed any intention of enforcing the statute against Plaintiffs.[4] Moreover, although it does not appear that this statute has ever been enforced against a newspaper, the law has been enforced against an individual. *See Narvaez Narvaez,* 122 P.R.Dec. 80. Therefore, it is not a moribund statute. Thus, the Court holds that there is a threat of prosecution sufficiently credible to give Plaintiffs standing to bring a pre-enforcement challenge to the constitutionality of Article 247. *See Gardner,* 99 F.3d at 16–17.[5]

■ Lastly, the standing doctrine also "embraces prudential concerns regarding the proper exercise of federal jurisdiction." *United States v. AVX Corp.,* 962 F.2d 108, 114 (1st Cir.1992). To meet these additional concerns, a suit must satisfy certain criteria. One, the complaint should "fall within the zone of interests protected by the law invoked." *Gardner,* 99 F.3d at 15 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)) (internal quotations omitted). Two, the plaintiff gen-

---

4. Even if Fuentes Agostini were to file a motion stating that he has no intention of enforcing Article 247 against any newspaper or publication, the Court would still conclude that Plaintiffs have standing. Such a declaration by the official in charge of enforcing the statute at issue would not bind him or his successors. *See ACLU v. The Florida Bar,* 999 F.2d 1486, 1494 (11th Cir. 1993). Thus, the threat of prosecution would continue to exist.

5. In order to support their claim of a credible threat of prosecution and a "chilling effect" of the statute, Plaintiffs focus on incidents which are only marginally relevant to the present controversy. Specifically, Plaintiffs detail at length how a Puerto Rico Superior Court judge brought a libel suit against *El Vocero* and Roca. The case was subsequently dismissed in a lengthy opinion. Plaintiffs bound the opinion in book form and distributed it to all the judges in Puerto Rico. Plaintiffs claim as evidence of a credible threat of prosecution the reaction to this distribution, which included public condemnations by the

Puerto Rico Bar Association and the president of a Puerto Rico judges' association, as well as a civil injunction sought by a local prosecutor who claimed that the distribution was an offense to Puerto Rico's judges. None of these incidents, however, involved Article 247. What Plaintiffs fail to point out, however, is that the condemnations by the bar and judges associations do not mention Article 247, and the court opinion dismissing the prosecutor's injunction does not cite it. In fact, because the injunction was *civil* in nature, there is no indication that Article 247, a criminal statute, was even considered in the suit.

Intervenor's evidence raises concerns over his federally protected right to criticize the judiciary in the press. Generally, threats of disciplinary measures may not be used to silence a columnist merely because he is also licensed to practice law. *See generally Pennekamp v. State of Florida,* 328 U.S. 331, 346–50, 66 S.Ct. 1029, 1037–39, 90 L.Ed. 1295 (1946); *Bridges v. State of California,* 314 U.S. 252, 268–78, 62 S.Ct. 190, 196–201, 86 L.Ed. 192 (1941).

erally must assert only his own rights and should not base his claim on the rights and interests of a third party. *Gardner*, 99 F.3d at 15 (quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Three, the case must contain more than "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Gardner*, 99 F.3d at 15 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (internal quotations omitted)).

█ In the case before the Court, Plaintiffs' complaint implicates freedom of expression; therefore, it falls within the zone of protected First Amendment rights. Second, Plaintiffs are making this claim based on their own rights of expression. Third, Plaintiffs' claim that their reporting on court cases could subject them to prosecution is a sufficiently specified grievance. *See Gardner*, 99 F.3d at 15–16. Thus, this claim satisfies these additional criteria that must be considered in determining whether a plaintiff has standing. Therefore, based on all of the above, the Court holds that Plaintiffs have standing to bring this claim.

*2. Pullman abstention*

█ In his motion to dismiss, Fuentes Agostini also argues that this Court should abstain from resolving Plaintiffs' constitutional challenge to the statute in order to allow the local Puerto Rico courts to address it first. This argument is raised only briefly by Fuentes Agostini. Given the gravity of the relief which Plaintiffs seek and the federalism concerns implicated in a federal court's ruling on the constitutionality of a state law, this issue merits some discussion. Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Pustell v. Lynn Public Schools*, 18 F.3d 50, 53 (1st Cir.1994). Abstention by a federal court, therefore, is an extraordinary measure.

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272 (1st Cir.1996). It should be the exception, and not the rule, of federal courts. *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244; *Cuesnongle v. Ramos*, 835 F.2d 1486, 1499 (1st Cir.1987).

█ Under *Railroad Comm. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), a federal court may abstain from hearing a case when a state court's ruling on an unclear state law would make unnecessary a federal constitutional ruling. *Pustell*, 18 F.3d at 53; *Rivera–Puig v. Garcia–Rosario*, 983 F.2d 311, 321–22 (1st Cir.1992). *Pullman* abstention allows a federal court to ask a state court to clarify a "murky question of state law." *Duty Free Shop v. Administracion De Terrenos*, 889 F.2d 1181, 1183 (1st Cir.1989). This form of abstention promotes the policy that a court should avoid resolving unnecessary constitutional questions and adjudicating hypothetical, abstract issues. *Cuesnongle*, 835 F.2d at 1496. Additionally, this policy promotes federal court deference to state courts on state law issues. *Id.* A case involving a federal constitutional challenge to an unclear state law is the type of case in which *Pullman* abstention is most appropriate. *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). The statute must be uncertain in nature and clearly susceptible to a limiting structure. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Where, however, the state law is unambiguous, abstention is impermissible. *Rivera–Puig*, 983 F.2d at 322. The federal court should not abstain solely to give the state court a first opportunity to vindicate the federal rights at issue. *Id.*

█ When an action is pending in state court that is likely to resolve the state law issue underlying the federal one, abstention is appropriate. *Harris County*, 420 U.S. at 84, 95 S.Ct. at 875. There should be a reasonable possibility that a state court will clarify the law and obviate a constitutional determination by the federal court. *Rivera–Puig*, 983 F.2d at 322. In the present case,

there is no indication in the record that there is pending in the Puerto Rico local courts a case involving Article 247. In such a circumstance, certification of a state question to the highest state court would serve to promote the policy concerns which justify *Pullman* abstention.[6] *Cuesnongle*, 835 F.2d at 1496. The United States Supreme Court has recently emphasized the importance of certification. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1073–75, 137 L.Ed.2d 170 (1997). A novel and unsettled question of state law justifies use of state certification procedures. *Id.* at ——, 117 S.Ct. at 1074–75. Certification permits a federal court presented with a novel state law issue to submit the issue directly to a state's highest court. *Id.* at ——, 117 S.Ct. at 1073. This procedure generally will not entail the expense, delay, and complexity of an abstention. *Id.* at ——, 117 S.Ct. at 1075. Thus, certification can greatly simplify the federal court's task. *Id.* These concerns "bear heightened attention" when a federal court is called upon to declare a state law unconstitutional. *Id.* at ——, 117 S.Ct. at 1074.

 In the present case, the Court must determine whether Article 247 violates Plaintiffs' First Amendment rights. In the course of this task, the Court will of course have to interpret the statute. This fact by itself, however, is not sufficient to justify certification or abstention. Before a federal court can rule on the constitutionality of a state statute, it must determine what the statute means. *Broadrick v. Oklahoma*, 413 U.S. 601, 617 n. 16, 93 S.Ct. 2908, 2919 n. 16, 37 L.Ed.2d 830 (1973). The language of Article 247 is straightforward. It prohibits the use of communications, books, papers, instruments, threats, intimidations, persuasions, or entreaties to influence a judge or juror in that person's decision in a pending case. There is nothing novel in this law which would justify certification to the Puerto Rico Supreme Court. Article 247 is not uncertain in nature or ambiguous, as is required to

justify a *Pullman* abstention. In his request for abstention, Fuentes Agostini fails to point to any ambiguity in the law. Absent any ambiguities in the statute, an abstention or certification would not be appropriate. *See Rivera–Puig*, 983 F.2d at 322.

### 3. Overbreadth

 Plaintiffs claim that Article 247 is unconstitutionally overbroad. Specifically, they argue that the article would forbid any newspaper commentary on a pending court case. Under the First Amendment overbreadth doctrine, an individual whose own speech may be prohibited may mount a facial challenge to a statute " 'because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid'." *Bd. of Airport Comm'rs of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 2572, 96 L.Ed.2d 500 (1987) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985)). For a statute to be invalidated on its face, however, the overbreadth must be substantial, *Jews for Jesus*, 482 U.S. at 574, 107 S.Ct. at 2572. This is so because the application of the overbreadth doctrine is "strong medicine." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916. It should be used " 'sparingly and only as a last resort.' " *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 14, 108 S.Ct. 2225, 2234, 101 L.Ed.2d 1 (1988) (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916).

 A facial challenge on overbreadth grounds will succeed only if there is a "realistic danger" that the law will "significantly compromise" the First Amendment protection of third parties not before the court. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984); *Auburn Police Union v. Carpenter*, 8 F.3d 886, 895 (1st

---

6. The Puerto Rico legislature has established a procedure by which a federal court may certify an issue of Puerto Rico law to the Puerto Rico Supreme Court. *See* P.R. Laws Ann. tit. 32, App. III R. 53.1(c) (1983); *see also Cuesnongle v. Ra-* mos, 119 P.R. Dec. 457, 462–64, 19 Official Translations 493, 499–501 (1987); *Pan Am. Computer Corp. v. Data Gen. Corp.*, 112 P.R. Dec. 780, 782–91, 12 Official Translations 983, 987–996 (1982).

Cir.1993). The mere fact that it is possible to conceive of impermissible applications of the law will not be sufficient to challenge the law on overbreadth grounds. *Vincent,* 466 U.S. at 800, 104 S.Ct. at 2126; *United States v. Johnson,* 952 F.2d 565, 577 (1st Cir.1991). The party claiming overbreadth must demonstrate from actual facts and from the text of the challenged statute that there is a substantial number of instances in which the statute cannot be constitutionally applied. *New York State Club Ass'n,* 487 U.S. at 14, 108 S.Ct. at 2234; *Johnson,* 952 F.2d at 577. The party challenging the statute must establish that the statute has a substantial potential to chill the speech of third parties. *Vincent,* 466 U.S. at 802, 104 S.Ct. at 2127; *United States v. Hicks,* 980 F.2d 963, 970 (5th Cir.1992). If the First Amendment rights of the challenging party are coterminous with the rights of third parties, the overbreadth challenge will not be appropriate. *Vincent,* 466 U.S. at 802, 104 S.Ct. at 2127; *Hicks,* 980 F.2d at 969.

 In the case before the Court, Plaintiffs claim that Article 247 threatens their First Amendment rights with regard to their reporting and editorializing on court cases in Puerto Rico. In making this argument, however, Plaintiffs fail to present any evidence that Article 247 also infringes upon the First Amendment rights of parties not before the Court. They do not show that the rights of third parties are threatened in a manner different from the alleged threat to Plaintiffs' own rights. The purpose of the overbreadth doctrine is to protect the threatened rights of *other* parties not before the court. *Jews for Jesus,* 482 U.S. at 574, 107 S.Ct. at 2572. In their arguments, Plaintiffs have not established that the rights of third parties are being threatened by Article 247 in a way different from Plaintiffs' own rights. The Court must assume, then, that any threat to third parties' rights is coterminous to any threat to Plaintiffs' own rights. Accordingly, their overbreadth argument must fail. *See Vincent,* 466 U.S. at 802, 104 S.Ct. at 2127 (Party challenging statute did not "demonstrate that the ordinance applies to any conduct more likely to be protected by the First Amendment than their own" speech); *Hicks,* 980 F.2d at 969 (Appellant did not argue that

statute was "overbroad in that it may also chill *other* types of protected expression" besides that expression used by appellant) (emphasis in original).

### 4. Vagueness

 Plaintiffs also argue that Article 247 is unconstitutionally vague. This is an argument based on principles of due process. A statute is void for vagueness if it fails to give people of ordinary intelligence reasonable notice of what type of conduct is prohibited. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *United States v. Bird,* 124 F.3d 667, 683 (5th Cir.1997). All languages—including English and Spanish—suffer from limitations in their ability to convey ideas in both an unambiguous and manageably brief fashion. However, the mere fact that a law will contain some ambiguity is not sufficient to make it unconstitutional. *United States Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973) (although a provision "may not satisfy those intent on finding fault at any cost," it will survive vagueness review if it is sufficient for an ordinary person exercising common sense to understand). The law must give fair warning of what activities are proscribed or it must provide explicit standards for those charged with enforcing it. *Broadrick,* 413 U.S. at 608, 93 S.Ct. at 2913. These requirements of specificity take on a heightened meaning when the statute at issue implicates First Amendment rights. *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974). A challenge to a statute on vagueness grounds will be successful only if the statute is "impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *Melugin v. Hames,* 38 F.3d 1478, 1486 (9th Cir.1994); *Hicks,* 980 F.2d at 972; *Whiting v. Town of Westerly,* 942 F.2d 18, 22 (1st Cir.1991).

 The Court finds that Article 247 does not suffer from vagueness. The stat-

ute prohibits the attempt to use extrajudicial measures to influence a judge's or juror's decision in a pending case. The subsections of the statute provide a list of these prohibited measures. P.R. Laws Ann. tit. 33, § 4443(a), (b), (c). The statute is straightforward in its exposition of what types of conduct are proscribed: written or oral communications; books, papers, or exhibited instruments; and threats, intimidations, persuasions, or entreaties. Plaintiffs' chief argument seems to be that Article 247 is too broad in the type of activities that it covers.[7] This is not an argument to support a claim of vagueness; rather, it is an argument as to the scope of the statute as applied to Plaintiffs, and the Court addresses that argument in the following section. Moreover, although the list of proscribed conduct in Article 247 contains a broad range of activity, the list itself is not unclear. A person or ordinary intelligence should receive fair warning that any communication with a judge or juror outside of normal legal channels in an attempt to influence the decision of that judge or juror is prohibited. Accordingly, the Court holds that it is not unconstitutionally vague.

### 5. Article 247 as applied to Plaintiffs

Although their overbreadth and vagueness arguments fail, Plaintiffs may also challenge Article 247 as it applies to their own activities. *See Vincent,* 466 U.S. at 803, 104 S.Ct. at 2128; *Hicks,* 980 F.2d at 970. In First Amendment challenges to government regulation of speech, two different levels of scrutiny—strict and intermediate—are used to analyze the regulation. *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 736 (1st Cir.1995). The level of scrutiny to be applied is dependent on whether the regulation at issue is content-neutral or content-based. Distinguishing between these two categories is not a simple task.

A court's principal inquiry in making this determination is whether the government adopted the regulation because of disagreement with the message the speech conveys. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). The government's purpose is a key consideration. *Id.* A regulation is content-neutral if it serves a purpose unrelated to the content of the speech, even though the regulation may have an incidental effect on some speakers but not others. *Id.; Globe Newspaper Co. v. Beacon Hill Architectural Comm'n,* 100 F.3d 175, 183 (1st Cir. 1996). If the regulation is "justified without reference to the content of the regulated speech," it is content-neutral. *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984).

The purpose of Article 247 is to protect judicial proceedings from improper external influences. *Narvaez Narvaez,* 122 P.R.Dec. at 86, 89–90, Official English translation at 4, 7–8. Article 247 prohibits extrajudicial communications to judges or jurors which attempt to influence their decisions. It is the message of influence itself which is conveyed in these communications and which the statute seeks to prevent. The justification for the statute is to prevent the evil associated with the content of these communications. The question of whether a communication to a judge or juror violates Article 247 depends on the content of the communication. Thus, the Court holds that Article 247 is a content-based regulation.

Content-based restrictions are presumptively invalid under the First Amendment. *Dedham,* 43 F.3d at 736. They are subject to strict scrutiny. *Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622, 642, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497 (1994); *Dedham,* 43 F.3d at 736. Under this standard, the regulation must be narrowly

---

**7.** In their motion for summary judgment, Plaintiffs raise a series of points in support of their claim that Article 247 is unconstitutionally vague. Docket no. 16, at 24–25. These arguments include: the statute does not have a legislative history; the statute "does not set forth appropriate burdens of proof;" the statute "does not state whether such controversies would be of law or fact;" and the term of punishment is excessive. Other than raising them briefly in their motion, Plaintiffs supply no legal arguments for these points. They provide no support to a claim of vagueness, and the Court need not address them.

tailored to further a compelling state interest. *Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 666, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990); *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988). This heightened standard is necessary because content-based laws pose the risk that the state is seeking to suppress unpopular ideas or information. *Turner Broadcasting,* 512 U.S. at 641, 114 S.Ct. at 2458.

In the present case, Article 247 represents the government's interest in protecting judiciary proceedings and ensuring that they are fair and not subject to improper influences. A state certainly has a substantial interest in protecting its judicial proceedings. *See Cox v. Louisiana,* 379 U.S. 559, 562, 85 S.Ct. 476, 479–80, 13 L.Ed.2d 487 (1965); *Stretton v. Disciplinary Bd. of Supreme Court of Pa.,* 944 F.2d 137, 142 (3rd Cir.1991); *see also Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 848, 98 S.Ct. 1535, 1546, 56 L.Ed.2d 1 (1978) ("There could hardly be a higher governmental interest than a State's interest in the quality of its judiciary.") (Stewart, J., concurring). Its government may promulgate the necessary safeguards to ensure that the administration of justice is free from external influence and control. *Cox,* 379 U.S. at 562, 85 S.Ct. at 480. Thus, the Court holds that Puerto Rico has a compelling interest in enacting a statute to protect judges and jurors from improper influences. Plaintiffs acknowledge as much in their opposition to the motion to dismiss.[8]

▮▮▮ The Court must next determine whether Article 247 is narrowly tailored to serve the state's purpose of ensuring that judicial proceedings be fair and free from external influences. In order to serve this purpose, Article 247 prohibits a broad variety of measures by which influence may be exerted over a judge or juror. Among the proscribed measures are threats and intimidations. P.R. Laws Ann. tit. 33, § 4443(c). These activities are not protected by the First Amendment. *See Bird,* 124 F.3d at 683; *United States v. Whiffen,* 121 F.3d 18, 22 (1st Cir.1997). Thus, Article 247 would violate the First Amendment only if its prohibition of the remaining activities-communications, books, papers, persuasions, or entreaties—is not narrowly tailored.

An analysis of the federal statute on improperly influencing judges and jurors is instructive in the Court's determination on the constitutionality of Article 247. The federal statute reads in pertinent part as follows:

### Influencing or injuring officer or juror generally

(a) Whoever *corruptly,* or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

18 U.S.C.A. § 1503 (West Supp.1997) (Emphasis added). This statute has survived constitutional challenge on overbreadth and vagueness grounds. *See United States v. Cintolo,* 818 F.2d 980, 996–97 (1st Cir.1987) (Section 1503 neither overbroad nor vague);

---

8. Docket no. 11, at 17.

*United States v. Jeter,* 775 F.2d 670, 677–79 (6th Cir.1985) (same); *United States v. Griffin,* 589 F.2d 200, 206–07 (5th Cir.1979) (Although broad in scope, section 1503 is not unconstitutionally vague and gives fair notice of the conduct it prohibits); *United States v. Howard,* 569 F.2d 1331, 1336–37 (5th Cir. 1978) (Statute not unconstitutionally vague); *Anderson v. United States,* 215 F.2d 84, 89–90 (6th Cir.1954) (same); *United States v. Mitchell,* 397 F.Supp. 166, 172 (D.D.Cir.1974) (Sirica, J.) (Because the statute requires that the endeavor be done "corruptly," it is not unconstitutionally vague).

Section 1503(a) has three clauses. The first clause prohibits an individual from endeavoring to influence, intimidate, or impede a juror or officer of the court. The second clause prohibits the injuring of a juror or court official. The third or "omnibus" clause prohibits endeavoring to impede or obstruct the due administration of justice. The first clause is most analogous to Article 247. The elements of this first clause are (1) endeavor to (2) corruptly (3) influence, intimidate, or impede a juror or court official in his or her duties. *United States v. Tedesco,* 635 F.2d 902, 907 (1st Cir.1980). Article 247, by contrast, forbids the "attempt[ ] to influence any judge [or] juror." There is not a requirement in Article 247 that the defendant act "corruptly."

The phrase "corruptly" is a nebulous concept, *see Cintolo,* 818 F.2d at 991 ("the term is admittedly susceptible to different meanings in different contexts"), and courts have wrestled with its meaning. *See, e.g., United States v. North,* 910 F.2d 843, 938–44 (D.C.Cir.1990) (Silberman, J., dissenting), *opinion withdrawn and superseded in part on rehearing by* 920 F.2d 940 (D.C.Cir.1990); *Cintolo,* 818 F.2d at 991–92 (citing cases); *United States v. Reeves,* 752 F.2d 995, 998–1001 (5th Cir.1985); *see also* Annotation, *Meaning of Term "Corruptly" for Purposes of 18 U.S.C.A. § 1503,* 62 A.L.R. Fed. 303 (1983). Generally, it means that the defendant has acted with an improper motive or intent to bring about an unlawful result. *See United States v. Barfield,* 999 F.2d 1520, 1524–25 (11th Cir.1993); *Cintolo,* 818 F.2d at 992–93 (A defendant, acting with a corrupt motive to impede the fair administration of justice, has engaged in conduct which has the capacity to influence a judge or juror.); *Reeves,* 752 F.2d at 1001 (Reading "corruptly" to mean an intent to obtain an unlawful benefit or advantage); *Tedesco,* 635 F.2d at 907; *United States v. Ogle,* 613 F.2d 233, 238–39 (10th Cir.1979); *see also Roma Constr. Co. v. aRusso,* 96 F.3d 566, 573–74 (1st Cir.1996).

The Court finds the absence in Article 247 of a requirement that a defendant act corruptly or improperly to be significant. The corruptly element in section 1503 is a "staunch barrier against prosecutorial overreaching." *Barfield,* 999 F.2d at 1525. It ensures that the statute is neither overbroad nor void for vagueness, *Jeter,* 775 F.2d at 679. This element protects individuals whose communications are not intended to obstruct the fair administration of justice. *Barfield,* 999 F.2d at 1525. The lack of a corruptly element in Article 247 substantially broadens the scope of activity covered by that statute. For example, a newspaper editorial criticizing a judge's ruling in an ongoing case could be considered a written communication or a persuasion attempting to influence the judge's decision. As such, it would be in violation of Article 247. The Supreme Court has recognized, however, that newspaper editorials criticizing judicial proceedings are protected by the First Amendment. *See Pennekamp v. State of Florida,* 328 U.S. 331, 346–50, 66 S.Ct. 1029, 1037–39, 90 L.Ed. 1295 (1946); *Bridges v. State of California,* 314 U.S. 252, 268–78, 62 S.Ct. 190, 196–201, 86 L.Ed. 192 (1941). Such commentary is punishable only if the risk of an unfair administration of justice is " 'extremely serious and the degree of imminence [is] extremely high.' " *Landmark,* 435 U.S. at 845, 98 S.Ct. at 1544 (quoting *Bridges,* 314 U.S. at 263, 62 S.Ct. at 194). In borderline cases courts should rule in favor of allowing the commentary and preserving the freedom of public expression. *Pennekamp,* 328 U.S. at 347, 66 S.Ct. at 1037. Generally, out-of-court comments by the press do not constitute a clear and present danger to the administration of justice. *Landmark,* 435 U.S. at 844, 98 S.Ct. at 1544. Because a free and unrestrained press is an integral

part of our democratic society, courts should be constantly vigilant to ensure that the press retains its freedom. *See, e.g., New York Times Co. v. United States,* 403 U.S. 713, 715–18, 91 S.Ct. 2140, 2142–43, 29 L.Ed.2d 822 (1971) (Black, J., concurring).

A requirement in Article 247 that communications or persuasions be done corruptly would serve to protect those forms of public expression—including expressions in the press—which are traditionally covered by the First Amendment. At the same time it would preserve the state's compelling interest to ensure that its judicial proceedings are conducted fairly. Some states have followed the federal lead and have narrowed the scope of their statutes on influencing jurors and judges by requiring that the conduct be done corruptly.[9] *See* Cal.Penal Code § 95 ("Every person who corruptly attempts to influence a juror ... or arbitrator...."); D.C.Code Ann. § 22–722 (A person commits obstruction of justice if he "[k]nowingly uses intimidation or physical force, threatens or corruptly persuades another person, ... to influence, intimidate, or impede a juror ... or officer in any official proceeding...."); Idaho Code § 18–1304 ("Every person who corruptly attempts to influence a juror, or ... an arbitrator ... in respect to his verdict...."); La.Rev.Stat.Ann. tit. 14, ch. 1, § 129(A)[10] ("To constitute the offense of jury tampering, the influencing or attempt to influence the juror must be either: (1) For a corrupt or fraudulent purpose, or (2) By violence or force, by threats whether direct or indirect."); Md.Code Ann., Crimes and Punishments § 26 ("If any person by corrupt means or by threats or force endeavors to influence, intimidate, or impede any juror, witness, or court officer of any court of this State in the discharge of his duty...."); N.J.Stat.Ann. § 2C:29–8 ("Any person who, directly or indirectly, corrupts, influences or attempts to corrupt or influence a jury or juror ... by promises, persuasions, entreaties, threats, letters, money, entertainment or other sinister means...."); R.I.Gen.Laws § 11–32–3 ("Whoever corruptly, maliciously, recklessly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court ... in the discharge of his or her duty...."); Vt.Stat.Ann. tit. 13, § 3015[11]

**9.** Oklahoma and South Dakota both have statutes which are similar to Article 247 in language, scope, and the absence of a limiting requirement that the attempt to influence be done corruptly or improperly. Okla. Stat. tit. 21, § 388 ("Every person who attempts to influence a juror, or any person summoned or drawn as a juror, or chosen as arbitrator or appointed a referee, in respect to his verdict, or decision of any cause or matter pending, or about to be brought before him, either: 1st, By means of any communication oral or written had with him, except in the regular course of proceedings upon the trial of the cause; 2nd, By means of any book, paper, or instrument, exhibited otherwise than in the regular course of proceedings, upon the trial of the cause; 3rd, By means of any threat or intimidation; 4th, By means of any assurance or promise of any pecuniary or other advantage; or, 5th, By publishing any statement, argument or observation relating to the cause, is guilty of a misdemeanor."); S.D. Codified Laws § 22–11–16 ("Any person who attempts to influence a juror, or any person summoned or drawn as a juror, or chosen an arbitrator or appointed a referee, in respect to his verdict or decision in any cause or matter pending, or about to be brought before him: (1) By means of any communication, oral or written, had with him, except in the regular course of proceedings upon the trial of the cause; (2) By means of any book, paper or instrument exhibited otherwise than in the regular course of proceedings upon the trial of the cause; or (3) By publishing any statement, argument or observation relating to the cause; is guilty of a Class 6 felony."). The Court is unaware of any constitutional challenges to either of these two statutes.

**10.** An earlier version of Louisiana's statute on jury tampering was not limited by a requirement that the conduct be done corruptly or with an improper motive. *State v. Robertson,* 241 La. 249, 252, 128 So.2d 646, 647 (1961) ("Jury tampering is any influencing of, or Attempt to influence, any petit juror in respect to his verdict in any cause pending, or about to be brought before him, otherwise than in the regular course of proceedings upon the trial of such cause."). The Louisiana Supreme Court held that because the statute could be applied to proscribe a newspaper article or a simple communicative gesture, it obscured the line between criminal and noncriminal conduct and therefore violated the state constitution. *Id.* at 254–58, 128 So.2d 646, 648–49. The current language, which requires that jury tampering be done either for a corrupt or fraudulent purpose or by violence or force, was subsequently added.

**11.** In *State v. McHugh,* 161 Vt. 574, 635 A.2d 1200 (1993), the Vermont Supreme Court held

("Whoever corruptly, or by threats or force, or by any threatening letter or communication, intimidates or impedes any ... juror, or officer in or of any court...."). Other states prohibit attempts to influence that are done improperly. *See* Kan.Crim.Code Ann. ch. 21, § 21–3815(a) ("Attempting to influence a judicial officer is communicating with any judicial officer in relation to any matter which is or may be brought before such judge, magistrate, master or juror with intent improperly to influence such officer."); Nev.Rev.Stat. § 199.040 ("Every person who shall influence, or attempt to influence, improperly ... a juror or ... an arbitrator or referee, in respect to his verdict, judgment, report, award or decision in any cause...."). One court has held such a statute to be constitutional. *See State v. Torline,* 215 Kan. 539, 541–42, 527 P.2d 994, 996–97 (1974) (Statute which prohibited the attempt to influence a judicial officer "with intent improperly to influence such officer" was not void for vagueness under either the United States or Kansas Constitutions). There are other states that, rather than have a single statute banning all attempts to influence judges and jurors, have enacted individual discrete statutes to cover the different means by which improper influence may be done. *See* Haw. Rev.Stat. §§ 710–1073, 710–1074, 710–1075; Ky.Rev.Stat.Ann. §§ 524.060, 524.080, 524.090, 524.120; Tenn.Code Ann. §§ 39–16–108, 39–16–508, 39–16–509. All these statutes are examples of narrowly tailored measures to serve a state's compelling interest in protecting the judicial process.

In his opposition to Plaintiffs' motion for summary judgment, Fuentes Agostini argues that because the conduct prohibited by Article 247 is a specific intent crime, the statute is narrowly tailored in the same way that "corruptly" narrows the scope of section 1503. It is true that the Puerto Rico statute requires specific intent. *See Narvaez Narvaez,* 122 P.R.Dec. at 90–91, Official English translation at 8–9; Dora Nevares–Muñiz, *Co-*

*digo Penal de Puerto Rico,* at 385–86 (1993). As discussed above, however, "corruptly" generally means something more than specific intent. It also refers to conduct done with an improper motive or intent to bring about an unlawful result. *See Barfield,* 999 F.2d at 1524–25; *Cintolo,* 818 F.2d at 992–93; *Reeves,* 752 F.2d at 1001; *Tedesco,* 635 F.2d at 907; *Ogle,* 613 F.2d at 238–39; *see also aRusso,* 96 F.3d at 573–74. Thus, "corruptly" puts a limit on the scope of a statute such as section 1503 which is more restrictive than the specific intent requirement of Article 247.

Unfortunately, the Puerto Rico legislature did not limit the scope of Article 247 with any of the measures utilized by the above-cited states. As the statute currently reads, a newspaper editorial by Plaintiffs which severely criticizes a judge's rulings in an ongoing case could be covered by any of the three subsections of Article 247. Thus, the statute's prohibition of certain forms of expression such as communications, books, papers, persuasions, or entreaties is not narrowly tailored. There exists a risk that this law could be used to prohibit the publication of unpopular ideas or information. *See Turner Broadcasting,* 512 U.S. at 641, 114 S.Ct. at 2458. If Article 247 contained one of the limiting features adopted by other states, it would proscribe only improper or corrupt communications which attempt to influence judicial proceedings via extrajudicial channels. Such communications are generally not subject to First Amendment protection. Because Article 247 is not so limited in scope, however, it encroaches upon Plaintiffs' constitutionally protected communications. Therefore, the Court is compelled to hold that Article 247 is not narrowly tailored to serve a compelling state interest. Accordingly, it violates the First Amendment.

WHEREFORE, for all of the above, the Court **grants** Plaintiffs' motion for summary judgment and declares that Article 247 of the Puerto Rico Penal Code is unconstitutional because it unduly encroaches upon the press'

---

that the application of section 3015 to an individual who had been peacefully picketing in front of a judge's residence violated the individual's First Amendment rights. The Vermont court held that the state's application of the statute was overbroad. The court also questioned whether the statute gave a person of ordinary intelligence reasonable notice of what conduct was prohibited. 161 Vt. at 575–76, 635 A.2d at 1201–02. The court did not, however, strike down the statute as being unconstitutional.

protected First Amendment rights. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**